# __EXHIBIT 1__

Original - Court
1st Copy- Defendant
2nd Copy - Plaintiff
3rd Copy -Return

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 25-006840-CD Hon.Annette J. Berry |
|---|---|---|

Court telephone no.: 313-224-4679

| Plaintiff's name(s), address(es), and telephone no(s) Bolton, Jeffrey M. | v | Defendant's name(s), address(es), and telephone no(s). Cardinal Health, Inc., a Delaware for profit corporation |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no Raymond J. Carey 33266 30500 Northwestern Highway FARMINGTON HILLS, MI 48334 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or  family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving  the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS  and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the  complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint   has been previously filed in ☐ this court, ☐ _____ Court,      where it was given case number _____ and assigned to Judge _____.

The action  ☐ remains  ☐ is no longer  pending.

Summons section completed by court clerk.      | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons  and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help  you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 5/7/2025 | Expiration date* 8/6/2025 | Court clerk Yolanda Payne |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01 (3/23)**      **SUMMONS**      MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



MCL 600.1910, MCR 2.104, MCR 2.105

SUMMONS

Case No. : **25-006840-CD**

## PROOF OF SERVICE

**TO PROCESS SERVER:** You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE OF SERVICE / NONSERVICE

☐ I served ☐ personally ☐ by registered or certified mail , return receipt requested, and delivery restricted to the addressee(copy of return receipt attached) a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff,deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) |

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with

_____ on _____
Attachments (if any)                                              Date and time

_____ on behalf of _____.

Signature

_____

25-006840-CD FILED IN MY OFFICE   WAYNE COUNTY CLERK   CATHY M. Garrett   5/7/2025 3:26 PM   Yolanda Payne

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

Jeffrey Bolton,

    Plaintiff,

v.

Cardinal Health, Inc., a Delaware
for profit corporation, and
Cardinal Health 110, LLC, a
Delaware for profit limited liability company,

    Defendants.

CASE NO. 25-  CD

Hon.

---

Raymond J. Carey (P33266)
Raymond J. Carey & Associates, PLLC
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(248) 865-0001/ F: (248) 865-0002
rcarey@work-lawyers.com
*Attorneys for Plaintiff*

---

*There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously field and dismissed or transferred after having been assigned to a Judge.*

      /s/Raymond J. Carey
      Raymond J. Carey (P33266)

## **COMPLAINT AND JURY DEMAND**

  Plaintiff Jeffrey Bolton (hereinafter "Plaintiff" or "Mr. Bolton"), by and through his

attorneys, RAYMOND J. CAREY & ASSOCATES, PLLC., complains against Defendants,

Cardinal Health, Inc., and Cardinal Health 110, LLC ("Defendant" or "Cardinal"), as follows:

1.     Plaintiff Jeffrey Bolton brings this action against Defendant for: discrimination based on age and retaliation for protected activity in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §§621, *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2201, *et seq.*; discrimination based on sex and retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§2000e, *et seq.*, and the ELCRA. These claims are premised on the adverse terms and conditions of Plaintiff's former employment with Defendant after it acquired Plaintiff's former employer and the circumstances leading up to and including the discriminatory and retaliatory demotions of Plaintiff, denials of opportunities for Plaintiff to be promoted, imposition of an unwarranted performance improvement plan on Plaintiff, and Defendant's termination of Plaintiff's employment relationship with it, effective August 11, 2023.

## PARTIES

2.     Plaintiff Jeffrey Bolton resides in the City of Walled Lake, in Oakland County, State of Michigan.

3.     Defendant Cardinal Health, Inc., is a for-profit corporation organized under the laws of the State of Delaware with corporate offices in Dublin Ohio, but which also has offices and operations in Livonia, County of Wayne, Michigan.

4.     Defendant Cardinal Health 110, LLC, is a for-profit limited liability company organized under the laws of the State of Delaware with corporate offices in Dublin Ohio, but which also has offices and operations in Livonia, County of Wayne, Michigan.

5.     Plaintiff had been employed by Defendant in various capacities between September, 2014, and August 11, 2023, at its operations in Livonia, Michigan, providing technical information technology support, among his other duties and responsibilities, for Defendant's

Warehouse Management System ("WMS") at pharmaceutical distributions centers in Indianapolis, Indiana, and Memphis, Tennessee.

## JURISDICTION AND VENUE

6.      The amount in controversy exceeds $25,000 exclusive of interest and costs.

7.      Plaintiff filed a Charge of Discrimination with the EEOC on June 6, 2024, asserting claims against Defendant for discrimination based on age in violation of the ADEA and national origin, religion, and sex and retaliation in violation of Title VII.

8.      Plaintiff's Charge of Discrimination was filed within the 300-day period after August 11, 2023, when his employment was wrongfully terminated by Defendant.

9.      The EEOC issued a Notice of Suit Rights to Plaintiff with respect to the above referenced Charge of Discrimination on February 12, 2025, and Plaintiff is filing this Complaint to include claims for discrimination based on age in violation of the ADEA and religion and sex and retaliation in violation of Title VII within the requisite 90-day period after he received the Notice.

10.     This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to MCLA §600.605 and MCLA § 37.2801.

11.     This Court has personal jurisdiction over Plaintiff because he resides in Oakland County, Michigan.

12.     This Court has personal jurisdiction over Defendant because it maintains offices, engages in regular and systematic business and other activities in Wayne County, Michigan.

13.     This Court has personal jurisdiction over Defendant because the acts attributed to Defendant that give rise to Plaintiff's claims occurred and adversely affected him within Wayne County, Michigan.

14.     Venue is proper in this Circuit Court pursuant to MCLA §600.1621 and MCLA §37.2801 and because Defendant is located within Wayne County, Michigan, and the acts and omissions attributed to Defendant that give rise to Plaintiff's claims occurred within Wayne County, Michigan.

15.     Venue also is convenient in this judicial district.

## STATEMENT OF FACTS

16.     Mr. Bolton currently is a 60-old Caucasian American male who was born on November 20, 1965.

17.     Mr. Bolton was employed by The Harvard Drug Group ("HDG"), LLC, between 2005 and 2006 as an Operations Systems supervisor and was recruited by HDG for and commenced reemployment with HDG on September 29, 2014, in the role of Director Warehouse Management Systems, a position that was primarily remote and had required limited travel for work related responsibilities.

18.     At the time when Mr. Bolton commenced employment with HDG, it had been the second largest generics-focused pharmaceutical distributor in the United States; had manufactured and supplied generic and supplied branded pharmaceuticals to over 6,000 retail customers, which had included independent, regional and national pharmacies; and had serviced institutional clients, such as, hospital central-purchasing agents, long-term-care facilities, and government clients through its "Major" label of generic drugs.

19.     Mr. Bolton was well qualified for his position as HDG's WMS Director since he had extensive education and training and job experience since 1997 related to pharmaceutical WMS, transportation management systems, supply chain logistics, and software and related electronic technologies pertaining to these matters.

20.     Ms. Bolton successfully performed the duties and responsibilities of his position as HDG's WMS Director throughout his employment by HDG.

21.     As HDG's WMS Director, Mr. Bolton reported to HDG's Chief Information Officer ("CIO") and successfully: maintained, enhanced, managed, configured, and oversaw all aspects of HDG's warehouse system; oversaw and collaborated with cross-functional team members and internal and external stakeholders which included domestic and international customers and suppliers; and provided leadership and management with respect to WMS system design and configuration, warehouse configuration, WMS system enhancement, WMS customer programming and development with outside vendors, WMS system and operations performance reporting, WMS bug fixes and troubleshooting, WMS end user training, warehouse product slotting, and 24/7/365 full WMS system support.

22.     Mr. Bolton also supervised 2 employees and multiple contractors as HDG's WMS Director.

23.     Throughout Mr. Bolton's employment with HDG, Mr. Bolton had performed the duties and responsibilities of his job positions in a more than satisfactory or effective manner, this had been reflected in the evaluations of his job performance, he had received annual bonuses because of his more than satisfactory or effective job performance, and he had not been subjected to discipline, warnings, performance discussions, coaching of any kind ostensibly, or a performance improvement plan ("PIP") due to poor performance or misconduct of any kind.

24.     On July 5, 2015, Defendant acquired HDG.

25.     Mr. Bolton had continued to successfully perform the duties and responsibilities of his position as WMS Director and supervised 2 employees and the various contractors after Defendant's acquisition of HDS.

26.     Despite his proficiency as HDG's WMS Director, Defendant wrongfully demoted Mr. Bolton during 2017 to a role as Manager, Application Development and Maintenance ("ADM"), in conjunction with Defendant's scheme to force the retirements or employment terminations of former HDG employees and to replace them with employees who were younger, female, and/or otherwise did not share their protected characteristics.

27.     Although he had been wrongfully demoted to an ADM manager role, Mr. Bolton had still been expected and continued to successfully perform the duties and responsibilities of his former director position and supervised 2 employees and the various contractors, and reported to Mr. Matt Endress, Defendant's Vice President for Warehouse Systems, between 2017 and 2019.

28.     In mid-2019, Defendant hired a woman named Allison who was approximately 30 years old as an ADM Director without having given Mr. Bolton the opportunity to be considered for the position although he was amply qualified for the position since he had been wrongfully demoted from the role, he would have been the most qualified candidate had he been considered for it, and Allison was not qualified and demonstrated her lack of qualifications for it after she was hired.

29.     Although Allison had been hired as an ADM director, Mr. Bolton had still been expected and continued to successfully perform the duties and responsibilities of his former director position and supervised 2 employees and the various contractors because she had been assigned responsibilities in the role that had differed from those that Mr. Bolton had performed in the role.

30.     Allison committed many errors in her role as an ADM director which Mr. Bolton had been required to correct and had significantly increased his work-load.

31. Allison terminated employment as an ADM director after approximately 4 months of employment because she was not qualified and had demonstrated her lack of qualifications for the role.

32. Although he had been wrongfully demoted to an ADM manager role, Mr. Bolton had still been expected and continued to successfully perform the duties and responsibilities of his former director position and supervised 2 employees and the various contractors before and after Allison's employment as ADM director terminated and he was not given the opportunity to be considered for the ADM director position after Allison's removal although he was amply qualified for it and had been responsible for correcting the errors Allison had committed.

33. The ADM director role remained vacant for several months thereafter until Mr. Tim Gabel, who was 35 years the time, was hired for or promoted to the role.

34. Defendant hired or promoted Mr. Gabel to the ADM director role without having given Mr. Bolton the opportunity to be considered for the position although he was amply qualified for the position since he had been wrongfully demoted from the role, he would have been the most qualified candidate had he been considered for it, and Mr. Gabel had significantly less experience and qualifications for the ADM director role than Mr. Bolton.

35. Despite having been wrongfully again denied consideration for the ADM director role, Mr. Bolton had still been expected and continued to successfully perform the duties and responsibilities of his former director position, supervised 2 employees and the various contractors, and reported to Mr. Endress after Mr. Gabel assumed the ADM director role.

36. The COVID-19 pandemic erupted in March, 2020.

37. In August, 2021, Defendant mandated that all of its employees be vaccinated with the then newly developed COVID 19 vaccine by December 6, 2021.

38.     Although Mr. Bolton's job was remote, he had still been subjected to Defendant's COVID 19 vaccine mandate.

39.     Receipt of the COVID 19 vaccination would have violated Mr. Bolton's sincerely held religious beliefs, practices, and observances.

40.     During the period between August and November, 2021, Mr. Endress and Defendant's human resources representatives had continually pressured Mr. Bolton to report on his COVID 19 vaccination status and threatened him with employment termination if he did not get vaccinated by December 6, 2021.

41.     During the period between August and November 30, 2021, Mr. Bolton exercised his right to seek an exemption from Defendant's vaccine mandate as an accommodation for his sincerely held religious beliefs, practices, and observances.

42.     During the period after Mr. Bolton had requested the accommodation for his sincerely held religious beliefs, practices, and observances, Mr. Endress and Defendant's other management and human resources representatives continually pressured him to report on his vaccination status and threatened him with employment termination if he did not get vaccinated by December 6, 2021.

43.     Mr. Bolton's accommodation request had been denied by Defendant's Human Resources representatives after they had previously advised Mr. Bolton's managers and supervisors and others about his requested accommodations, and Mr. Endress informed him that his employment was to have been terminated as a consequence and he was to have been contacted by Defendant's Human Resources representatives to effectuate him employment termination.

44.     Defendant rescinded its vaccine mandate on or about November 29, 2021, and Defendant's refrained from terminated Mr. Bolton's employment at the time.

45. In December, 2021, Defendant hired or promoted Ms. Shrivani Marwaha, an Asian woman of Indian national origin who was in her 30s, as a ADM manager to whom Mr. Bolton was to have reported although he had the same title as her at the time and without having given Mr. Bolton the opportunity to be considered for the position although he was amply qualified for the position since he had been wrongfully demoted from the role, he would have been the most qualified candidate had he been considered for it, and Ms. Marwaha had significantly less experience and qualifications for the ADM manager role than Mr. Bolton.

46. Despite having been wrongfully denied consideration for the ADM manager role for which Ms. Marwaha had been selected, Mr. Bolton had still been expected and continued to successfully perform the duties and responsibilities of his former director position, supervised the various contractors, and initially had continued to report to Mr. Endress after Ms. Marwaha assumed the ADM manager role.

47. In December, 2021, Mr. Bolton was notified by Mr. Endress that his job had been reclassified and he had been demoted again this time to an ADM senior engineer role reporting to Ms. Marwaha and which resulted in a diminution in the amount of annual bonus for which he previously had been eligible although Mr. Bolton had still been expected and continued to successfully perform the duties and responsibilities of his former director position and supervised 2 employees and the various contractors.

48. Mr. Bolton was told by Mr. Endress that he had been demoted because of the previous selection of Ms. Marwaha for the ADM manager role for which Mr. Bolton had been denied consideration, there could be only one ADM manager, he could not have continued to report to her as a peer had he been allowed to retain his ADM manager role, and the demotion purportedly was to have been good for his career.

49. Despite having been wrongfully demoted and denied consideration for the ADM manager role, Mr. Bolton had still been expected and continued to successfully perform the duties and responsibilities of his former director position and supervised 2 employees and the various contractors after Ms. Marwaha assumed the ADM manager role.

50. Mr. Bolton had been replaced by Ms. Marwaha as an ADM manager and then demoted in December, 2021, because Mr. Bolton's age and sex and in retaliation for Mr. Bolton's religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

51. Mr. Bolton complained to Mr. Endress in December, 2021, that his wrongful demotion to the ADM senior engineer role, the selection of Ms. Marwaha for the ADM manager role, and the failure to have been considered for the ADM manager and director roles was indicative of discrimination against him based on his age and sex and retaliation against Mr. Bolton for his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

52. Although Mr. Bolton may not have expressly accused Mr. Endress of discrimination against him based on his age, religious beliefs, and sex and retaliation against Mr. Bolton for his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate, Mr. Endress had understood and reasonably should have understood from the context that Mr. Bolton had objected to his wrongful demotion to the ADM senior engineer role, the selection of Ms. Marwaha for the ADM manager role, and the failure to have been considered for the ADM manager and director roles because it was indicative of such discrimination and retaliation against him since:

(a)    Mr. Endress had made and/or participated in the decisions to demote Mr. Bolton to the ADM senior engineer role, to refuse consideration of him for the ADM manager and director roles, and to select Ms. Marwaha for the ADM manager role and Allison and Mr. Gabel for ADM director roles;

(b)    Mr. Bolton is a man who was more than twenty years older than Ms. Marwaha who had been less qualified than Mr. Bolton, but whom had been selected for the ADM manager role;

(c)    Mr. Bolton is a man who was more than twenty years older than Allison and Mr. Gabel who had been less qualified than Mr. Bolton, but whom had been selected for ADM director roles;

(d) Mr. Endress had notice of Mr. Bolton's previously asserted religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate; and

(e)    Mr. Endress had anticipated that the demotions of Mr. Bolton and refusals to consider him for the ADM director and manager roles would have precipitated his resignation or retirement.

53.    Mr. Endress advised Mr. Gabel, Ms. Marwaha, and Defendant's higher management and human resources representatives about Mr. Bolton's complaint.

54.    Ms. Marwaha had been retained in the ADM manager role for until only February, 2022.

55.    Mr. Bolton as ADM Senior Engineer then reported to Mr. Gabel until September, 2022.

56.    Despite having been wrongfully denied consideration for the ADM manager role, Mr. Bolton had still been expected and continued to successfully perform the duties and

responsibilities of his former director position and supervised the various contractors after Ms. Marwaha left the ADM manager role.

57.     In September, 2022, Ms. Tara Rissmeyer, who was approximately 30 years old at the time, was hired or promoted to the ADM manager role.

58.     Defendant hired or promoted Ms. Rissmeyer to the ADM manager role without having given Mr. Bolton the opportunity to be considered for the position although he was amply qualified for the position since he had been wrongfully demoted from the role, he would have been the most qualified candidate had he been considered for it, and Ms. Rissmeyer had significantly less experience and qualifications for the ADM manager role than Mr. Bolton.

59.     Despite having been wrongfully demoted to an ADM senior engineer role and denied consideration for ADM manager role, Mr. Bolton had still been expected and continued to successfully perform the duties and responsibilities of his former director position and supervised the various contractors although they ostensibly had been removed as his identified direct reports for administrative purposes after Ms. Rissmeyer became the ADM manager.

60.     Mr. Bolton complained to Messrs. Endress and Gabel in September, 2022, that his wrongful demotion to the ADM senior engineer role, the selection of Ms. Rissmeyer for the ADM manager role, and the failure to be considered for the ADM manager and director roles was indicative of discrimination against him based on his age and sex and retaliation against Mr. Bolton for his previous complaints about age and sex discrimination and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

61.     Although Mr. Bolton may not have expressly accused Messrs. Endress and Gabel of discrimination against him based on his age and sex and retaliation against Mr. Bolton for his previous complaints about age and sex discrimination and his religious objections to and request

for accommodation from Defendant's COVID 19 vaccine mandate, they had understood and reasonably should have understood from the context that Mr. Bolton had objected to his wrongful demotion to the ADM senior engineer role, the selection of Ms. Rissmeyer for the ADM manager role, and the failure to be considered for the ADM manager and director roles because it was indicative of such discrimination and retaliation against him since:

(a)     Mr. Endress had made and/or participated in the decisions to demote Mr. Bolton to the ADM senior engineer role, to refuse consideration of him for the ADM manager and director roles, and to select Ms. Marwaha and Ms. Rissmeyer for the ADM manager roles and Allison and Mr. Gabel for ADM director roles;

(b)     Mr. Bolton is a man who was more than twenty years older than Ms. Marwaha and Ms. Rissmeyer who had been less qualified than Mr. Bolton, but whom had been selected for the ADM manager roles;

(c)     Mr. Bolton is a man who was more than twenty years older than Allison and Mr. Gabel who had been less qualified than Mr. Bolton, but whom had been selected for ADM director roles;

(d) Mr. Endress had notice of Mr. Bolton's previously asserted religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate; and

(e)     Mr. Endress had anticipated that the demotions of Mr. Bolton and refusals to consider him for the ADM director and manager roles would have precipitated his resignation or retirement.

62.     Mr. Endress advised Mr. Gabel, Ms. Rissmeyer, and Defendant's higher management and human resources representatives about Mr. Bolton's complaint.

63.     Throughout Mr. Bolton's employment with HDG and Cardinal after its acquisition of HDG, Mr. Bolton had performed the duties and responsibilities of his job positions in a more than satisfactory or effective manner, this had been reflected in the evaluations of his job performance, he had received annual bonuses because of his more than satisfactory or effective job performance, and he had not been subjected to discipline, warnings, performance discussions, coaching of any kind ostensibly, or a PIP due to poor performance or misconduct of any kind.

64.     Despite this, Ms. Rissmeyer began to micromanage Mr. Bolton immediately after she became an ADM manager and Mr. Bolton's supervisor and she concocted false reasons to subject Mr. Bolton to discipline and a performance improvement plan ("PIP") because Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources and other management representatives had intended to facilitate the involuntary termination of Mr. Bolton's employment or compel his resignation or retirement because of his age and sex and in retaliation for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

65.     During the period between February and August, 2023, Ms. Rissmeyer wrongfully faulted Mr. Bolton and subjected him to a PIP for his justified refusal to engage in acts that would have been violative of government regulations applicable to pharmaceutical manufacturers and distributors and although he had not previously received notices or warnings about any alleged unsatisfactory job performance or a negative evaluation of his job performance which, among other criteria , were prerequisites for issuance of a PIP under Defendant's policies.

66.     During the period between February and August, 2023, Ms. Rissmeyer wrongfully faulted Mr. Bolton and subjected him to a PIP for ADM system non-compliance matters for which she or direct reports of hers other than Mr. Bolton had been responsible and although he had not

previously received notices or warnings about any alleged unsatisfactory job performance or a negative evaluation of his job performance which, among other criteria, were prerequisites for issuance of a PIP under Defendant's policies.

67.     Many of the goals included in the PIP that Mr. Bolton was to have achieved were unreasonable and unachievable and/or could not have been timely and effectively achieved within the applicable time period contrary to standards governing issuance of a PIP under Defendant's policies.

68.     Mr. Bolton's complained to Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives that: (a) the PIP was interfering with his ability to perform his duties as the lead associate in a very important Drug Supply Chain Security Act ("DSCSA") project to solidify the safety and security of the nation's pharmaceutical supply chain thus putting the safety and security of the nation's drug supply in jeopardy; and (b) he had been wrongfully subjected to the PIP by Ms. Rissmeyer in disregard of Defendant's policies and that this was indicative of discrimination against him because of his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

69.     Although Mr. Bolton may not have expressly accused Ms. Rissmeyer and Messrs. Endress and Gabel of discrimination against him based on his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate, Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources and other management representatives had understood and reasonably should have understood from the context that Mr.

Bolton had objected to issuance of the PIP to him because it was indicative of such discrimination and retaliation against him since:

(a)     Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had made and/or participated in the decision to subject Mr. Bolton to the PIP;

(b)     Mr. Bolton is a man who was more than twenty years older than Ms. Rissmeyer and Mr. Gabel and substantial older than Mr. Endress;

(c)     Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had notice of Mr. Bolton's previously asserted complaints about discrimination against him based on age and sex and retaliation against him because of his complaints about discrimination against him based on age and sex and religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate; and

(d)     Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had anticipated that subjecting Mr. Bolton to the PIP after having previously demoted him and refused to consider him for the ADM director and manager roles would have precipitated his resignation or retirement.

70.     Although Ms. Rissmeyer initially held bi-weekly meetings with Mr. Bolton concerning the PIP, Ms. Rissmeyer and Defendant's human resources representatives provided no support to Mr. Bolton that ostensibly should have been intended to facilitate his ability to achieve the objectives of the PIP during the period after Ms. Rissmeyer issued it to him.

71.     Defendant reassigned Ms. Rissmeyer to a new role on July 5, 2023, and neither she nor Defendant's human resources representatives had conducted bi-weekly meetings with Mr. Bolton concerning the PIP since then.

72. Mr. Bolton timely satisfied all reasonable and achievable goals included in the PIP and had received no notice to the contrary at any time before August 11, 2023.

73. Indeed, Mr. Gabel praised Mr. Bolton for his accomplishments and sent an organization-wide BRAVO award about his performance in July and August 2023.

74. Ms. Rissmeyer convened a meeting with Mr. Bolton on August 11, 2023, which Mr. Bolton previously had been told was to have pertained to the evaluation of his fiscal 2023 job performance for which he had met or exceeded all set objectives and to advise of him of his profit-sharing bonus that was to have been tendered to him in September, 2023.

75. Instead, Ms. Rissmeyer notified Mr. Bolton on August 11, 2023, that his employment with Defendant had been terminated ostensibly because he had failed to satisfy the goals and objectives of the PIP although Mr. Bolton had timely satisfied all reasonable and achievable goals included in the PIP and he had met or exceeded all set objectives applicable to his fiscal 2023 job performance.

76. Defendant thereafter replaced Mr. Bolton with a male or female employee who was approximately 30 years of age.

77. Ms. Rissmeyer and other representatives of Defendant involved the decisions to subject Mr. Bolton to the unjustified PIP and terminate his employment unlawfully discriminated against him because of his age and sex and retaliated against him because of his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

78. Ms. Rissmeyer and other representatives of Defendant involved the decisions to subject Mr. Bolton to the unjustified PIP and terminate his employment did not abide by Defendant's policies pertaining to annual evaluation of fiscal year job performance, its PIP

process, and performance based employment terminations when they imposed the unjustified PIP on Mr. Bolton, did not determine that he had timely satisfied the achievable goals and objectives of the PIP, did not extend the PIP, did not reassign or demote Mr. Bolton in lieu of employment termination had he not timely satisfied the achievable goals and objectives of the PIP, and terminated his employment because their intent when the unjustified PIP was imposed on him was to effectuate the termination of his employment because of his age and sex and in retaliation for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

79. Ms. Rissmeyer and other representatives of Defendant involved the decisions to subject Mr. Bolton to the unjustified PIP and terminate his employment did not give due consideration to Mr. Bolton's history of more than satisfactory or effective job performance; his previous, unblemished disciplinary record; and the recognition he had routinely received for his dedication, hard work, and commitment as an employee of Defendant, including the BRAVO award about his performance that he had received in July and August 2023, when they imposed the unjustified PIP on Mr. Bolton, did not determine that he had timely satisfied the achievable goals and objectives of the PIP, did not extend the PIP, did not reassign or demote Mr. Bolton in lieu of employment termination had he not timely satisfied the achievable goals and objectives of the PIP, and terminated his employment because their intent when the unjustified PIP was imposed on him was to effectuate the termination of his employment because of his age and sex and in retaliation for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

80. Ms. Rissmeyer and other representatives of Defendant involved the decisions to subject Mr. Bolton to the unjustified PIP and terminate his employment unlawfully treated Mr.

Bolton differently than similarly situated younger and female employees and employees who did not share his religious beliefs whose then most recent fiscal year annual job performance ratings had been satisfactory, effective, or worse, but who were not subjected to a PIP and/or whose employment was not terminated whether or not they had been subjected to a PIP.

81.    Defendant's   purported reasons for the decisions to subject Mr. Bolton to the unjustified PIP and terminate his employment; the failures to abide by Defendant's  policies and practices pertaining to evaluation of annual job performance, its PIP process, and performance based employment terminations; and the failures to provide Mr. Bolton with the guidance and support he may have needed to succeed and complete the achievable goals and objectives of the PIP, to extend the PIP, and/or to reassign or demote Mr. Bolton to another job position in lieu of employment termination are not true and are pretexts for discrimination against him because of his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

## COUNT I – VIOLATION OF THE ADEA
## AGE DISCRIMINATION

82.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

83.    At all times relevant, Plaintiff was an employee covered by and within the meaning of 29 U.S.C. §630 (f) and Defendant was his employer covered by and within the meaning of 29 U.S.C. §630 (b).

84.    At all times relevant, Defendant was a "person" as this term is defined by 29 U.S.C. §630 (a) and Messrs. Endress and Gabel and Ms. Rissmeyer were agents of Defendant with respect

to the terms and conditions of and the termination of Plaintiff's former employment with Defendant.

85.    At all times relevant herein, under the ADEA and 29 U.S.C. § 623, Plaintiff had a right to employment with Defendant free from discrimination against him and interference with his rights based on his age.

86.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his age and depriving Plaintiff of his rights under the ADEA.

87.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his age and depriving Plaintiff of his rights under the ADEA when they:

(A)    demoted him first to an ADM manager role and later to an ADM senior engineer role;

(B)    refused to consider him for ADM director and manager roles for which employees who were between the ages of 30 and 35 were selected;

(C)    refused to consider him for the ADM manger role for which Ms. Rissmeyer was selected in September, 2022;

(D)    subjected Plaintiff to the PIP between February and August, 2023; and

(E)    terminated Plaintiff's employment, effective August 11, 2023.

88.    The discriminatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities.

89.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary,

bonuses, incentive compensation, and earning capacity; lost value of retirement benefits; loss of health care, retirement, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT II– VIOLATION OF THE ADEA
## RETALIATION

.90.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

91.    At all times relevant, Plaintiff was an employee covered by and within the meaning of 29 U.S.C. §630 (f) and Defendant was his employer covered by and within the meaning of 29 U.S.C. §630 (b).

92.    At all times relevant, Defendant was a "person" as this term is defined by 29 U.S.C. §630 (a) and Messrs. Endress and Gabel and Ms. Rissmeyer were agents of Defendant with respect to the terms and conditions of and the termination of Plaintiff's former employment with Defendant.

93.    At all times relevant herein, under the ADEA and 29 U.S.C. § 623, Plaintiff had a right to employment with Defendant free from retaliation against him because he had engaged in activity protected by the ADEA, i.e., because he complained about or opposed violations of the ADEA.

94.    Plaintiff engaged in activity protected by the ADEA when he  complained to Messrs. Endress that he had been wrongfully demoted and denied consideration for ADM manager and director roles, Messrs. Endress and Gabel that he had been wrongfully demoted and denied consideration for ADM manager roles for which Ms. Marwaha and Ms. Rissmeyer had been selected, and  to Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources

representatives that he had been wrongfully subjected to the PIP by Ms. Rissmeyer in disregard of Defendant's policies and that each of these adverse actions was indicative of discrimination against him because of his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

95      Although Plaintiff may not have expressly accused Ms. Rissmeyer or Messrs. Endress and Gabel of discrimination against him based on his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate, Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had understood and reasonably should have understood from the context that Plaintiff had objected to these adverse employment actions because these had been indicative of such discrimination and retaliation against him since:

(a)      Ms. Rissmeyer, Messrs. Endress and Gabel, and/or Defendant's human resources representatives had made and/or participated in the various decisions to demote Mr. Bolton, deny him consideration for ADM manager and director positions, and subject him to the PIP, among other employment actions that had adversely affected Plaintiff;

(b)      Mr. Bolton is a man who was more than twenty years older than Ms. Rissmeyer and Mr. Gabel and substantial older than Mr. Endress;

(c)      Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had notice of Mr. Bolton's previously asserted complaints about discrimination against him based on age and sex and retaliation against him because of his complaints about

discrimination against him based on age and sex and religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate; and

(d)    Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had anticipated that subjecting Plaintiff to the various employment actions that had adversely affected Plaintiff and the PIP would have precipitated his resignation or retirement.

96.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his protect opposition activity and depriving Plaintiff of his rights under the ADEA.

97.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his protect opposition activity and depriving Plaintiff of his rights under the ADEA when they:

(A)    demoted him first to an ADM manager role and later to an ADM senior engineer role;

(B)    refused to consider him for ADM director and manager roles for which employees who were between the ages of 30 and 35 were selected;

(C)    refused to consider him for the ADM manger role for which Ms. Rissmeyer was selected in September, 2022;

(D)    subjected Plaintiff to the PIP between February and August, 2023; and

(E)    terminated Plaintiff's employment, effective August 11, 2023.

98.    The retaliatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities.

99.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; lost value of retirement benefits; loss of health care, retirement, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT III – VIOLATION OF Title VII
## DISCRIMINATION BASED ON SEX

100.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

101.    At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by 42 U.S.C. §§ 2000e(b), 2000e-2(a).

102.    At all times relevant, Defendant was a "person" as this term is defined by 42 U.S.C. § 2000e(a) and Messrs. Endress and Gabel and Ms. Rissmeyer were agents of Defendant with respect to the terms and conditions of Plaintiff's former employment with Defendant and the termination of Plaintiff's former employment with Defendant.

103.    At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-2(a), Plaintiff had a right to employment with Defendant free from discrimination against him based on his sex.

104.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his sex and depriving Plaintiff of his rights under Title VII.

105.    Defendant by and through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff because of his sex in violation of 42 U.S.C. § 2000e-2(a) and depriving Plaintiff of his

rights under Title VII and discriminated against Plaintiff on account of his sex in violation of 42 U.S.C. § 2000e-2(a) when they:

      (A)     demoted him first to an ADM manager role and later to an ADM senior engineer role;

      (B)     refused to consider him for ADM director and manager roles for which employees who were between the ages of 30 and 35 were selected;

      (C)     refused to consider him for the ADM manger role for which Ms. Rissmeyer was selected in September, 2022;

      (D)     subjected Plaintiff to the PIP between February and August, 2023; and

      (E)     terminated Plaintiff's employment, effective August 11, 2023.

106.     The discriminatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities.

107.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; lost value of retirement benefits; loss of health care, retirement, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT IV – VIOLATION OF
## TITLE VII – RETALIATION/INTERFERENCE

108.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

109.     At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by 42 U.S.C. §§ 2000e(b), 2000e-2(a).

110. At all times relevant, Defendant was a "person" as this term is defined by 42 U.S.C. § 2000e(a) and Messrs. Endress and Gabel and Ms. Rissmeyer were agents of Defendant with respect to the terms and conditions of Plaintiff's former employment with Defendant and the termination of Plaintiff's former employment with Defendant.

111. At all times relevant herein, under Title VII and 42 U.S.C. § § 2000e-2(a), 2000e-3(a), Plaintiff had a right to employment with Defendant free from retaliation, discrimination or interference because he complained about and opposed violations of Title VII and from coercion, intimidation, threats, retaliation, discrimination, and/or interference on account of having aided or encouraged any other person in the exercise of any right granted or protected by Title VII.

112. Plaintiff engaged in activity protected by Title VII when he complained to Messrs. Endress that he had been wrongfully demoted and denied consideration for ADM manager and director roles, Messrs. Endress and Gabel that he had been wrongfully demoted and denied consideration for ADM manager roles for which Ms. Marwaha and Ms. Rissmeyer had been selected, and to Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives that he had been wrongfully subjected to the PIP by Ms. Rissmeyer in disregard of Defendant's policies and that each of these adverse actions was indicative of discrimination against him because of his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

113. Although Plaintiff may not have expressly accused Ms. Rissmeyer or Messrs. Endress and Gabel of discrimination against him based on his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate, Ms. Rissmeyer,

Messrs. Endress and Gabel, and Defendant's human resources representatives had understood and reasonably should have understood from the context that Plaintiff had objected to these adverse employment actions because these had been indicative of such discrimination and retaliation against him since:

(a)    Ms. Rissmeyer, Messrs. Endress and Gabel, and/or Defendant's human resources representatives had made and/or participated in the various decisions to demote Mr. Bolton, deny him consideration for ADM manager and director positions, and subject him to the PIP, among other employment actions that had adversely affected Plaintiff;

(b)    Mr. Bolton is a man who was more than twenty years older than Ms. Rissmeyer and Mr. Gabel and substantial older than Mr. Endress;

(c)    Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had notice of Mr. Bolton's previously asserted complaints about discrimination against him based on age and sex and retaliation against him because of his complaints about discrimination against him based on age and sex and religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate; and

(d)    Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had anticipated that subjecting Plaintiff to the various employment actions that had adversely affected Plaintiff and the PIP would have precipitated his resignation or retirement.

114.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his protect opposition activity and depriving Plaintiff of his rights under the Title VII.

115. Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his protect opposition activity and depriving Plaintiff of his rights under the Title VII when they:

(A)  demoted him first to an ADM manager role and later to an ADM senior engineer role;

(B)  refused to consider him for ADM director and manager roles for which employees who were between the ages of 30 and 35 were selected;

(C)  refused to consider him for the ADM manger role for which Ms. Rissmeyer was selected in September, 2022;

(D)  subjected Plaintiff to the PIP between February and August, 2023; and

(E)  terminated Plaintiff's employment, effective August 11, 2023.

116. The retaliatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities.

117. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; lost value of retirement benefits; loss of health care, retirement, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT V
## VIOLATION OF THE ELCRA
## AGE DISCRIMINATION

118.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

119.    At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCLA §§37.2101, *et seq.* ("ELCRA"). *See* MCL §37.2201(a).

120.    At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against him based on his age.

121.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his age and depriving Plaintiff of his rights under the ELCRA when they:

(A)    demoted him first to an ADM manager role and later to an ADM senior engineer role;

(B)    refused to consider him for ADM director and manager roles for which employees who were between the ages of 30 and 35 were selected;

(C)    refused to consider him for the ADM manger role for which Ms. Rissmeyer was selected in September, 2022;

(D)    subjected Plaintiff to the PIP between February and August, 2023; and

(E)    terminated Plaintiff's employment, effective August 11, 2023.

122.    The discriminatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities.

123.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; lost value of retirement benefits; loss of

health care, retirement, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**COUNT VI**
**VIOLATION OF THE ELCRA**
**DISCRIMINATION BASED ON SEX**

124.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

125.    At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCLA §§37.2101, *et seq.* ("ELCRA"). *See* MCL §37.2201(a).

126.    At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against him because of his sex.

127.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff because of his religion and sincerely held religious beliefs and depriving Plaintiff of her rights under the ELCRA when they:

(A)    demoted him first to an ADM manager role and later to an ADM senior engineer role;

(B)    refused to consider him for ADM director and manager roles for which employees who were between the ages of 30 and 35 were selected;

(C)    refused to consider him for the ADM manger role for which Ms. Rissmeyer was selected in September, 2022;

(D)    subjected Plaintiff to the PIP between February and August, 2023; and

(E)      terminated Plaintiff's employment, effective August 11, 2023.

128.      The discriminatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities.

129.      As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; lost value of retirement benefits; loss of health care, retirement, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**COUNT VII**
**VIOLATION OF THE ELCRA**
**RETALIATION**

130.      Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

131.      At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCLA §§37.2101, *et seq.* ("ELCRA"). *See* MCL §37.2201(a).

132.      At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from retaliation because he opposed discrimination against him and others based on age or other characteristics protected by ELCRA.

133.      Plaintiff engaged in activity protected by the ELCRA when he complained to Messrs. Endress that he had been wrongfully demoted and denied consideration for ADM manager and director roles, Messrs. Endress and Gabel that he had been wrongfully demoted and denied consideration for ADM manager roles for which Ms. Marwaha and Ms. Rissmeyer had been

selected, and to Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives that he had been wrongfully subjected to the PIP by Ms. Rissmeyer in disregard of Defendant's policies and that each of these adverse actions was indicative of discrimination against him because of his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate.

134.   Although Plaintiff may not have expressly accused Ms. Rissmeyer or Messrs. Endress and Gabel of discrimination against him based on his age and sex and retaliation against him for his complaints about discrimination based on his age and sex and his religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate, Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had understood and reasonably should have understood from the context that Plaintiff had objected to these adverse employment actions because these had been indicative of such discrimination and retaliation against him since:

(a)   Ms. Rissmeyer, Messrs. Endress and Gabel, and/or Defendant's human resources representatives had made and/or participated in the various decisions to demote Mr. Bolton, deny him consideration for ADM manager and director positions, and subject him to the PIP, among other employment actions that had adversely affected Plaintiff;

(b)   Mr. Bolton is a man who was more than twenty years older than Ms. Rissmeyer and Mr. Gabel and substantial older than Mr. Endress;

(c)   Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had notice of Mr. Bolton's previously asserted complaints about discrimination against him based on age and sex and retaliation against him because of his complaints about

discrimination against him based on age and sex and religious objections to and request for accommodation from Defendant's COVID 19 vaccine mandate; and

(d)     Ms. Rissmeyer, Messrs. Endress and Gabel, and Defendant's human resources representatives had anticipated that subjecting Plaintiff to the various employment actions that had adversely affected Plaintiff and the PIP would have precipitated his resignation or retirement.

135.     Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his protect opposition activity and depriving Plaintiff of his rights under the ELCRA.

136.     Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his protect opposition activity and depriving Plaintiff of his rights under the ELCRA when they:

(A)     demoted him first to an ADM manager role and later to an ADM senior engineer role;

(B)     refused to consider him for ADM director and manager roles for which employees who were between the ages of 30 and 35 were selected;

(C)     refused to consider him for the ADM manger role for which Ms. Rissmeyer was selected in September, 2022;

(D)     subjected Plaintiff to the PIP between February and August, 2023; and

(E)     terminated Plaintiff's employment, effective August 11, 2023.

137.     The retaliatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities.

138.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; lost value of retirement benefits; loss of health care, retirement, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**Wherefore,** Plaintiff requests the following relief against Defendant:

A.     A Judgment or Order reinstating Plaintiff to his former position with full seniority rights and restoration of compensation and benefits retroactive to August 11, 2023;

B.     A Judgment or Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $75,000.00 to which he is found to be entitled, inclusive of back and front pay, bonus, and other compensation lost by Plaintiff due to termination of his employment and reimbursement for costs incurred by Plaintiff to replace lost benefits or to cover medical and other expenses for which reimbursement would have been provided in accordance with terms of benefit plans for which Plaintiff previously had been eligible;

C.     Liquidated damages for violation of the ADEA;

D.     Compensatory and punitive damages for violation of Title VII;

E.     A Judgment or Order of this Court awarding Plaintiff compensatory and exemplary damages for mental anguish, emotional distress, humiliation, and injury to her reputation caused by Defendant's violations of the ELCRA;

F.     A Declaratory Judgment of this Court restoring Plaintiff's benefits retroactive to the date when her employment was terminated and requiring Defendant to fund these as though Plaintiff's employment had not been terminated;

G.      A Judgment or Order of this Court awarding Plaintiff pre- and post-judgment interest, costs, and attorney fees; and

H.      A Judgment or Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

Respectfully submitted,

RAYMOND J. CAREY & ASSOCIATES, PLLC

BY:     */s/ Raymond J. Carey*
        Raymond J. Carey (P33266)
        Attorney for Plaintiff
        30500 Northwestern Hwy, Suite 425
        Farmington Hills, MI 48334
Date: May 7, 2025        (248) 865-0001
        rcarey@work-lawyers.com

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

Jeffrey Bolton,                                   CASE NO. 25-            CD

               Plaintiff,                        Hon.

v.

Cardinal Health, Inc., a Delaware
for profit corporation, and
Cardinal Health 110, LLC, a
Delaware for profit limited liability company,

               Defendants.

---

Raymond J. Carey (P33266)
Raymond J. Carey & Associates, PLLC
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(248) 865-0001/ F: (248) 865-0002
rcarey@work-lawyers.com
*Attorneys for Plaintiff*

---

**DEMAND FOR TRIAL BY JURY**

    Plaintiff Jeffrey Bolton, by his attorneys, Raymond J. Carey & Associates, PLLC, demands

a trial by Jury.

                              Respectfully submitted,

                              RAYMOND J. CAREY & ASSOCIATES, PLLC

                              BY:    */s/ Raymond J. Carey*
                                      Raymond J. Carey (P33266)
                                      Attorneys for Plaintiff
                                      30500 Northwestern Hwy. Suite 425
                                      Farmington Hills, MI 48334
Dated: May 7, 2025                    (248) 865-0001
                                      rcarey@work-lawyers.com

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | **SUMMONS** | **CASE NO.**<br>**25-006840-CD**<br>Hon.Annette J. Berry |
|---|---|---|

Court telephone no.: 313-224-4679

| Plaintiff's name(s), address(es), and telephone no(s)<br>Bolton, Jeffrey M. | v | Defendant's name(s), address(es), and telephone no(s).<br>Cardinal Health 110, LLC, a Delaware for profit limited<br>liability company |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no<br>Raymond J. Carey 33266<br>30500 Northwestern Highway<br>FARMINGTON HILLS, MI 48334 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ _____ Court, where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.  **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>5/7/2025 | Expiration date*<br>8/6/2025 | Court clerk<br>Yolanda Payne |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01 (3/23)**        **SUMMONS**        MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



| SUMMONS |
|---|
| Case No. : **25-006840-CD** |

## PROOF OF SERVICE

**TO PROCESS SERVER:** You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served ☐ personally ☐ by registered or certified mail , return receipt requested, and delivery restricted to the addressee(copy of return receipt attached) a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff,deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) |

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with

_____ on _____
Attachments (if any)                                    Date and time

_____ on behalf of _____ .

Signature
_____

MCL 600.1910, MCR 2.104, MCR 2.105